# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 101

APRIL TERM, A.D. 2013

August 28, 2013

ZYGMUNT JOHN SAMIEC,

Appellant
(Plaintiff),

v.

SUSAN KAY FERMELIA,
f/k/a SUSAN KAY SAMIEC,

Appellee
(Defendant).

S-12-0269

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*
Jon Aimone of Lemich Law Center, Rock Springs, WY.

*Representing Appellee:*
Eric F. Phillips, Rock Springs, WY.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1] Father challenges an order interpreting divorce decree provisions that govern payment of counseling and medical expenses for the parties' children. We affirm.

## ISSUES

[¶2] Father states his issues as follows:

> 1. On a stipulated case, did the District Court err in answering a question which it had not been asked to answer?
>
> 2. Did the District Court abuse its discretion when it denied Fathers' Motion for Continuance to allow the presentation of evidence on the question, which the District Court answered but had not been asked to answer?

## FACTS

[¶3] In December of 2008, Zygmunt John Samiec (Father) filed for divorce from Susan Kay Fermelia f/k/a Samiec (Mother). Mother was awarded temporary custody of their two children and in 2009 the parties executed a settlement agreement, which was incorporated into the parties' divorce decree. Mother was awarded primary residential custody of the two children, with visitation for Father. The parties' agreement further included the following two provisions, at issue in this case:

> 7. . . . [Father] and [Mother] further agree [to] equally share the current outstanding and future costs and fees for the minor children's extracurricular activities, school activities and counseling costs. . . .
>
> . . . .
>
> 10. . . . [Father] currently carries medical insurance for the minor children. All costs of medical, dental optometric [sic], or orthodontic care not covered by such insurance for the children shall be split between the parties with [Father] paying 75% and [Mother] paying 25% of such uncovered costs.

[¶4] The parties' divorce was finalized in December of 2009. In early 2010 one of their children was placed at the Wyoming Behavioral Institute (WBI) after threatening

1

suicide. Soon thereafter, Father filed a petition to modify the divorce decree, seeking custody of their two children. Mother answered and counterclaimed. A hearing was set for March 29, 2012, but prior to the hearing the parties resolved their custody issues. However, the parties could not resolve how to divide the costs of their child's stay at WBI, pursuant to the settlement agreement. An unreported hearing occurred and the court issued a decision letter which provided as follows:

> This is a post-divorce matter heard by the Court on March 29, 2012. Prior to the scheduled hearing, counsel met with me in chambers and advised that they had resolved most issues raised by the parties and that they needed a ruling from the court on one remaining issue upon which they had been unable to reach agreement.
>
> . . . .
>
> Counsel advised me that it was not necessary to deal with specific monetary figures, but rather I was asked to define which costs relating to mental health issues were included in **counseling costs** which were to be split equally and which costs, if any, fell into the category of medical costs which required Mr. Samiec to pay 75% and his former wife to pay 25%. The context of the issue was explained both in chambers and in the courtroom as relating to present care being provided to one of [the] parties' minor children who is residing in a treatment facility. At no time during the in-chambers discussion or courtroom arguments was any reference made to agreements entered into by the parties regarding the division of these placement costs. Indeed, my understanding was that cost for the entire stay was at issue; otherwise, there would be no need for court clarification.
>
> My approach to the issue is pretty simple: any mental health treatment which goes beyond **counseling** would be considered a medical expense. **Counseling** is generally a periodic verbal interaction with a therapist. I determined that anytime a psychiatrist became involved in the process or if psychotropic medications were prescribed, it became a medical expense, my reasoning being that a psychiatrist is a medical doctor specializing in mental illness and that the involvement of such a trained specialist rendered the treatment medical and took it beyond the scope of **counseling**. I explained that while a psychiatrist could

2

certainly include **counseling** as part of his or her treatment of a patient (in which case such **counseling** would be considered a medical expense), **counseling** by a therapist who is not a medical doctor or who does not possess other advanced professional licensure would not fall into the realm of a medical expense.

I further determined that placement in a residential treatment facility goes beyond **counseling** as set forth in the Stipulation and Agreement due to the nature and extent of the services provided by the facility, thereby rendering such placement and treatment a medical expense. [Emphasis in original.]

[¶5]    After the court announced its decision orally, Father's counsel requested a continuance which the court denied. The court entered its Order on Modification of Judgment and Decree of Divorce on August 24, 2012 and Father appealed. No hearing transcript was provided in the appellate record and although Father certified that he intended to procure a statement of the evidence he did not do so.

## DISCUSSION

[¶6]    Father argues on appeal that because this case was submitted to the district court as a stipulated or agreed case, and only queried the meaning of "counseling" generally, the district court improperly answered the question in the context of the parties' dispute. Father argues that the district court should have only answered the question generally. Furthermore, Father argues that the district court improperly considered extrinsic evidence in analyzing the parties' settlement agreement and abused its discretion when it denied his motion for continuance at the hearing.

[¶7]    Mother submits that the district court properly interpreted the settlement agreement's provision, that it did not use extrinsic evidence, and that its denial of Father's motion to continue was appropriate. Mother also argues that the lack of a hearing transcript should weigh against Father's claims.

[¶8]    We share Mother's dismay at the lack of hearing transcript, as this Court's review is undeniably hampered when an appealed order is predicated on testimony and evidence presented at an unrecorded hearing. As we have stated before:

When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. *Capshaw v. Schieck,* 2002 WY

3

54, ¶ 21, 44 P.3d 47, [54] (Wyo. 2002). The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo. 1996); *Combs v. Sherry-Combs*, 865 P.2d 50, 55 (Wyo. 1993); and see *Wood v. Wood*, 865 P.2d 616 (Wyo. 1993) (dismissing appeal for lack of record, rather than affirming).

*Seherr-Thoss v. Seherr-Thoss*, 2006 WY 111 ¶ 6, 141 P.3d 705, 710 (Wyo. 2006) (quoting *Harshberger v. Harshberger*, 2005 WY 99, ¶ 3, 117 P.3d 1244, 1246-47 (Wyo. 2005)). Under these circumstances, because we must accept the district court's findings of fact, our review "is effectively limited to determining whether or not an error of law appears on the record." *Harshberger*, ¶ 6, 117 P.3d at 1249. We discern no such error of law from our review of the record or from the arguments presented.

[¶9] In addition, the absence of a hearing transcript presents its own challenge with regard to cases decided on stipulated or agreed upon facts. As contemplated by *Koontz v. South Superior*, 716 P.2d 358, 361 (Wyo. 1986),

In order to make an agreed case a just proceeding there are certain requirements that must be met. First, there must be "a clear statement of the facts agreed on." 3 Am.Jur.2d Agreed Case § 12 at 732; see *Fugate v. Mayor and City Council of Town of Buffalo*, Wyo., 348 P.2d 76, 81, 97 A.L.R.2d 243 (1959). Second, the statement of facts must "be sufficient in itself to enable the court directly to draw conclusions of law determinative of the matter in controversy." 3 Am.Jur.2d Agreed Case § 14 at 733. Finally, "the statement of facts constituting an agreed case should be made part of the record in the proceeding, lest there be no basis for review of the judgment." Id. § 16 at 734.

It is clear from the record that the parties did not present an agreed case that could produce a just result. They did not enter a stipulation of facts from which the district court could draw legal conclusions. Nor can a stipulation be found in the record upon which we can ground our appellate review. The district court rendered judgment on its assumption that the parties had submitted the case for

4

determination on the briefs. Yet there was no motion by either party indicating that the facts had been sufficiently developed for such a decision. Consequently, the surprise order was based only on conflicting and inadequate affidavits. The adjudication may have been speedy and inexpensive as encouraged by Rule 1, W.R.C.P., but it was unjust. [Footnote omitted.]

[¶10] In the absence of a hearing transcript, and in accordance with Rule 3.03 of the Wyoming Rules of Appellate Procedure,

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be filed and served on appellee within 35 days of the filing of the notice of appeal. Appellee may file and serve objections or propose amendments within 15 days after service. The trial court shall, within 10 days, enter its order settling and approving the statement of evidence, which shall be included by the clerk of the trial court in the record on appeal.

[¶11] Although Father certified in his Notice of Appeal that he intended to procure a statement of the evidence, he did not do so. Our hands are tied. This Court cannot assess whether or not the district court was presented with adequate facts or "context" to decide the issue and satisfy the *Koontz* requirements, if we are to assume this was an "agreed case." Given the lack of transcript and no statement of evidence, we must presume the context presented to the district court was adequate to satisfy the requirements of *Koontz*.

## CONCLUSION

[¶12] Affirmed.